The San Francisco Stevedoring Co. v. Commissioner. *
San Francisco Stevedoring Co. v. Commissioner
Docket No. 7775.
United States Tax Court
1946 Tax Ct. Memo LEXIS 71; 5 T.C.M. (CCH) 837; T.C.M. (RIA) 46234; October 2, 1946
Arthur H. Kent, Esq., and Valentine Brookes, Esq., 1720 Mills Tower, San Francisco 4, Calif., for the petitioner. T. M. Mather, Esq. and A. James Hurley, Esq., for the respondent. MURDOCK
Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $2,928.81 in the petitioner's excess profits tax for the calendar year 1942. The only issue for decision is whether $5,499.24 should have been accrued as income for the year 1939, thus increasing the income of the base period. The facts have been stipulated and the stipulation is adopted as the findings of fact. [The Facts] The petitioner is a California corporation. Its return for 1942 was filed with the collector of internal revenue for the northern district of California. The petitioner kept its books and made its returns at all *72 times material hereto upon a calendar year basis, using an accrual method of accounting. The petitioner was a member in 1939 of the Waterfront Employers Association of San Francisco (hereinafter referred to as San Francisco). San Francisco was a nonprofit California corporation organized in 1935 for the purpose of representing its members in their relations with labor. The petitioner was also a member in 1939 of the Waterfront Employers Association of the Pacific Coast (hereinafter referred to as Coast). Coast was a nonprofit California corporation organized in 1937 for the purpose of representing its members in their relations with labor. Its membership was similar to that of San Francisco, except that it covered a wider area. A number of the directors of San Francisco in 1939 were also directors of Coast. San Francisco had on hand in 1939 a surplus of $145,000 accumulated from dues and assessments. Its activities had been restricted by reason of the formation of Coast. The directors of Coast, on February 9, 1939, authorized a committee of Coast to meet with representatives of San Francisco to work out a plan for transferring to Coast the surplus of San Francisco, which would *73 revert upon the liquidation of San Francisco to the individual members of Coast. A committee of San Francisco wrote a letter to the members of San Francisco, including the petitioner, on June 1, 1939, advising them of the efforts being made to transfer the San Francisco surplus to Coast "to enable the latter to more effectively carry on its activities and replace the existing deficit in its treasury." The letter was in part as follows: The San Francisco directors feel that such a transfer should be effected. The San Francisco directors also feel that the debt should be repaid by the Coast Assoc&ation to the members of the San Francisco Association who contributed to the reserve as and when the Coast Board of Directors feels that conditions permit. This cannot be done without the consent of the members of the San Francisco Association, because it will result in a distribution of assets to the extent that repayment is made to members individually. The effect of such a plan, if carried out, would be the following: (1) The immediate creation of a substantial cash reserve for the Coast Association; (2) An orderly method of liquidating the loan by payments to members of the San Francisco *74 Association instead of the Association itself over a period, in proportion to their respective contributions to the funds of the San Francisco Association. If the foregoing plan is acceptable to the membership, Price, Waterhouse & Company will be employed to assure that payments to members will be proportioned to their various contributions to the San Francisco surplus. While the Board of Directors feels that it is within the power of the Association to make contributions to the Coast Association for the purpose of carrying on its activities, it seems equitable that provision should be made for the San Francisco members to ultimately receive the benefit of their respective contributions to the San Francisco surplus rather than to leave the surplus with the Coast Association or provide for its return to the San Francisco Association's treasury. In order that the distribution to the members may be carried out it is necessary to secure the consent of the membership. Your approximate share in the San Francisco surplus, subject to a later verification by the auditors, is $ . Enclosed is a self-addressed envelope together with a form for your approval. Please fill in and return *75 at your earliest convenience. All members of San Francisco, including the petitioner, returned signed consents by August 8, 1939. Each member agreed in the consent to the transfer of the funds to Coast "in consideration of the undertaking by the Coast Association to repay said funds to the present members of the San Francisco Association as long as they shall continue to be such members, such repayments to be made as and when the Board of Directors of the Coast Association shall deem it advisable and practicable to make such repayments." The consent also authorized the directors of San Francisco to take such action as they deem proper to transfer the funds to Coast and to provide for repayment by Coast "to the present members of the San Francisco Association in lieu of the latter Association itself" and "to provide specifically with the Coast Association that if any present member of the San Francisco Association shall cease to retain its membership while any balance of said funds remain unpaid to such former member, then such balance shall be paid to the San Francisco Association in lieu of being paid to such former member." The firm of accountants rendered a report on July 19, 1939 showing *76 the exact portion of the total of $145,000 to which each member of San Francisco would be entitled. The share of the petitioner was shown to be $5,499.24. A. Boyd, secretary-treasurer of both San Francisco and Coast, sent a copy of the accountants' report of July 19, 1939 to the petitioner and to every other member of San Francisco and of Coast, together with a letter stating that the share of each member of San Francisco in the surplus being transferred to Coast as a loan was shown in the accountants' report, consents had been received from all the members of San Francisco authorizing the transfer, the amount transferred would appear on the books of Coast as a loan from members of San Francisco and credits would be set up on the books of Coast to the individual members of San Francisco, and when funds became available and the Coast Board determined to liquidate the loan, in whole or in part, payments would be made to the individual companies in proportion to their respective contributions as set forth in the accountants' report. The $145,000 was carried on the books of Coast as a liability and shown on the balance sheet as "Advanced by members - W.E.A. of S.F." Coast eventually *77 paid the $145,000, without interest, to the members of San Francisco in four payments of 25 per cent each. The petitioner received payments of $1,374.81 on each of the following dates: February 14, 1941, October 20, 1943, January 17, 1944, and February 14, 1944. The petitioner did not accrue on its books or report in its return the $5,499.24 as income in 1939, but it reported each payment as income when received in the later years. Several of the 1939 members of San Francisco later ceased operations in that territory due to war conditions and were no longer members of San Francisco when Coast made the payments above described. Coast made payments to each of them in full in the same manner that it made payment to those which, like the petitioner, continued to be members of San Francisco. The petitioner did not receive or acquire the right to any dividends on stock or on memberships in corporations, or any distribution from San Francisco or Coast, during the years 1936 to 1940, inclusive, unless the loan made in 1939 by San Francisco to Coast constitutes a dividend accruable to the petitioner in 1939. [Opinion] The petitioner, which did not accrue in 1939 the $5,499.24 here *78 in controversy, now argues that, as a matter of law and proper accounting, it was required to accrue the item at that time as an amount due from Coast and it is entitled to the benefit of an accrual in 1939 in so far as the accrual affects its excess profits tax liability for 1942. The petitioner does not claim constructive receipt of a dividend from San Francisco in 1939. The parties agree on the general principles of law applicable. A taxpayer, using an accrual method of accounting, must accrue an item in the year in which the taxpayer acquires a fixed and unconditional right to receive the amount, even though actual payment is to be deferred. There must be no contingency or unreasonable uncertainty qualifying the payment or receipt. Income does not accrue to a taxpayer using an accrual method until there arises in him a fixed or unconditional right to receive it. ; ; ; ; ; *79 ; Mertens Law of Federal Income Taxation, section 12.60. The time when an item accrues is largely a question of fact to be determined in each case. It is our opinion, and we hereby find as an ultimate fact, that the item here in question did not accrue in 1939. It could not have been said in 1939 that there was no contingency or unreasonable uncertainty qualifying the payment to the petitioner of the amount in question. Coast had apparently supplanted San Francisco to the extent, at least, that San Francisco no longer needed this surplus of $145,000. If San Francisco had been liquidated at that time, all of the $145,000 would have been paid to members of San Francisco who were also members of Coast. Coast needed this money in order to carry on the labor relations of those members. The amount which the petitioner was to get was fixed, but so far as this record shows it was not only uncertain in 1939 as to just when Coast would pay the money to the petitioner, but it was also uncertain as to whether it would ever pay it. It is stated in the stipulation of facts that Coast needed the money to carry on its activities more *80 effectively and to replace the "existing deficit" in its treasury. If it did not realize income, it would not be able to make the payments. Coast was not required to repay the money at any certain time but only when Coast had funds available and its Board of Directors should decide to liquidate the loan. That time might never come. No interest was to be paid and no security was given. Furthermore, under repeated statements in the written documents used in arranging the transaction, the right of any 1939 member of San Francisco to receive its proportionate share, when the directors of Coast might see fit to pay it, was conditioned upon its continued membership in San Francisco. This latter condition was apparently waived, but it was a condition imposed in 1939 to which the petitioner had expressly agreed in writing. It would not be proper to conclude from the facts as stipulated that it could not have been raised successfully when the payments were made. We have taken these circumstances and all of the other facts set forth in the stipulation into account in reaching our conclusion stated above. The petitioner claims in the alternative that the payment received in 1941 was abnormal *81 income which should not have been included in excess profits net income for 1941 and, as a result, the petitioner's unused excess profits credit carry-over for 1942 has been understated. The respondent presents no argument in opposition and we conclude that the parties are not in disagreement in this respect. Decision will be entered under Rule 50. Footnotes
*. Withdrawn by Tax Court order dated January 30, 1947 and superseded by 8 TC , No. 25, CCH Dec. 15,574. The withdrawn opinion is reported here for record purposes.↩